**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 17, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES P. TENNILLE; ROBERT SMET; ADELAIDA DELEON; YAMILET RODRIGUEZ, individually and on behalf of all others similarly situated,

Plaintiffs - Appellees,

v.

THE WESTERN UNION COMPANY; WESTERN UNION FINANCIAL SERVICES, INC.,

Defendants - Appellants.

No. 14-1432

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:09-CV-00938-JLK-KMT)**

---

Charles G. Cole, Steptoe & Johnson, Washington, D.C. (Thomas M. Barba, Steptoe & Johnson, Washington, D.C.; Jason A. Yurasek, Perkins Coie LLP, San Francisco, California; and Jess A. Dance, Perkins Coie LLP, Denver, Colorado, with him on the briefs), for Defendants-Appellants.

Richard J. Burke, Quantum Legal LLC, St. Louis, Missouri (Jeffrey A. Leon, Jamie E. Weiss, Grant Y. Lee, Quantum Legal LLC, Highland Park, Illinois; Diogenes P. Kekatos and Stephen A. Weiss, Seeger Weiss LLP, New York, New York; Jonathan Shub, Seeger Weiss LLP, Philadelphia, Pennsylvania; Seth A. Katz, Burg Simpson Eldredge Hersh & Jardine, PC, Englewood, Colorado; Jim S. Calton, Jr., Calton Legal Services, SP, Eufaula, Alabama; James E. Cecchi, Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Roseland, New Jersey; Mitchell Baker, Denver, Colorado, with him on the briefs), for Plaintiffs-Appellees.

Before **HOLMES**, **McHUGH**, and **MORITZ**, Circuit Judges.

**McHUGH**, Circuit Judge.

## I. INTRODUCTION

Western Union Company and its subsidiary, Western Union Financial Services, Inc. (collectively, Western Union), appeal the district court's award of $40 million in attorney fees to class counsel after the settlement of a putative class action against Western Union. Because Western Union lacks standing to challenge the attorney-fee award, we do not have subject-matter jurisdiction and must dismiss the appeal.

## II. BACKGROUND

### *A. Factual History*

Western Union facilitates money transfers between customers in geographically distant locations. A small number of these transfers fail, usually because the sender provides invalid contact information for the recipient or because the recipient does not redeem the money. At any given time, Western Union holds approximately $100 million in unredeemed customer proceeds. Although the money remains the property of the sender, Western Union retains the funds until the customer requests a refund or until the money is subject to escheat under the relevant State's laws. During the time these amounts remain in Western Union's possession,

Western Union collects interest and charges a small monthly administrative fee, and it retains both of these amounts after the principal is refunded or escheated. Western Union's practice was to notify customers that their transfer had failed and that Western Union had possession of the unredeemed sums shortly before the money was to escheat to the States, often three years after the failure of the original money transfer. Historically, approximately 15% of Western Union customers responded to these notices and obtained a refund.

### *B. Procedural History*

Plaintiffs filed this putative class action to challenge Western Union's practice of failing to timely notify customers of failed money transfers and of holding customer money for years while accruing interest and charging administrative fees. While litigation over procedural hurdles to class certification was ongoing, the parties agreed to a settlement of the class claims against Western Union.

Under the settlement agreement, Western Union agreed to place all unredeemed customer money currently in its possession, less administrative fees, into a class settlement fund (the CSF) from which class members whose money had not yet escheated to the States could receive a refund of their remaining principal. The settlement agreement further provides for all customers whose money was held by Western Union during the relevant time to receive a payment roughly equal to the interest that accrued on their money while held by Western Union. These interest payments are to be paid from the CSF or a separate fund established by Western Union depending on whether the particular claimant's principal had escheated at the

time of settlement. The settlement agreement also establishes other forms of non-monetary relief for class members, including a requirement that Western Union alter its business practices to notify customers of failed transfers within 60–90 days. The district court approved the settlement, and a panel of this court affirmed the district court's decision. *Tennille v. Western Union Co.*, 785 F.3d 422 (10th Cir. 2015).

Counsel for the plaintiff class (Class Counsel) then sought an award of attorney fees, requesting 30% of the $135 million to be deposited in the CSF as the basis for the award. Western Union objected, and the district court referred the matter to a magistrate judge. The magistrate judge determined Western Union had no right to object to the attorney-fee award but nevertheless considered many of the issues raised by Western Union in independently assessing the reasonableness of the attorney-fee award.[1] Notably, the magistrate judge agreed with Western Union's central contention—that the $135 million in the CSF did not represent the benefit Class Counsel had obtained for the class members because the CSF consisted of funds that Western Union always acknowledged belonged to the individual class members. The magistrate judge calculated the actual benefit to the class as

[1] The magistrate judge concluded Western Union's objection was barred by Rule 23(h) of the Federal Rules of Civil Procedure, which provides, "A class member, or a party from whom payment is sought, may object to the motion [for attorney fees]." The magistrate judge ruled Western Union is not "a party from whom payment is sought" because Western Union's obligation to pay into the CSF "is not in any way contingent on the amount of attorney's fees awarded." Because we conclude Western Union lacks standing under Article III to challenge the attorney fee award, we need not decide whether Western Union's challenge would also be barred by Rule 23(h).

approximately $65 million in interest payments and nonmonetary relief and recommended an award of 35% of this "common fund."

The parties objected to the magistrate judge's recommendation. Although the district court also had doubts about Western Union's standing to object to the attorney-fee award, it permitted Western Union to participate in the objection hearing. The district court ultimately concluded the best measure of the benefit to the class was the value of the CSF. The district court reasoned that the placement of customer money in the CSF "puts the bird in the hand rather than in the bush" because, absent the creation of the CSF and the refund mechanism of the settlement, "return of these funds is highly speculative," involving a "detailed requirement for refund," "anticipated delays in receiving payment," and "additional, probably preclusive, cost and effort." The district court therefore awarded Class Counsel attorney fees of just over $40 million, approximately 30% of the $135 million value of the CSF. Western Union appeals.

## III. DISCUSSION

Class Counsel argues we cannot reach the merits of this appeal because Western Union lacks standing to challenge the attorney-fee award. A challenge to standing presents the "threshold jurisdictional question of whether a court may consider the merits of a dispute." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013). If we conclude a party lacks standing to appeal from a district court's order, we lack jurisdiction over the appeal and must dismiss it. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2668 (2013).

"We review the question of standing de novo." *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228 (10th Cir. 2001). Standing is a "core component" of the case-or-controversy requirement of Article III necessary to invoke federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans for Official Engl. v. Arizona*, 520 U.S. 43, 64 (1997). To satisfy Article III's standing requirement, the aggrieved party must make three showings:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The party invoking this court's jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

Generally, a settling defendant in a class action has no interest in the amount of attorney fees awarded when those fees are to be paid from the class recovery rather than the defendant's coffers. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 481 n.7 (1980) (recognizing the defendant "had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class"); *Copeland v. Marshall*, 641 F.2d 880, 905 n.57 (D.C. Cir. 1980) ("In 'common fund' cases, the losing party no longer continues to have an interest in the fund; the contest becomes one between the successful

plaintiffs and their attorneys over division of the bounty."); *cf. Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 855 (10th Cir. 1993) (concluding where "the fee awarded to objecting counsel came out of the common fund remaining after payment of class counsel's fee," only "the plaintiff class . . . could be considered aggrieved by that award"). Nevertheless, Western Union argues it has standing to challenge the attorney-fee award in this case because it claims it will be injured by a diminution of the CSF if Class Counsel is awarded an excessive attorney-fee award.

Western Union's argument is based on what it terms a "reversionary interest" in the CSF. Per the terms of the settlement agreement, Western Union will deposit approximately $135 million in unclaimed money belonging to its customers into the CSF. Those funds will be used to pay claims of class members whose funds have not yet escheated to the States, settlement administration fees, incentive payments to class representatives, and attorney fees. Any money remaining in the CSF will then be placed in a cy pres fund[2] under the district court's control, and the district court will release that money in pro rata shares to individual States upon receipt of a release of Western Union's liability under that State's unclaimed-property laws. If any State declines to release Western Union or asserts a claim against Western Union

[2] "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). The district court appears to have concluded the States are the "next best" beneficiary of the class settlement fund because any unclaimed money would have escheated to the States in the absence of the settlement agreement.

under the State's unclaimed-property laws, that State's pro rata share will be deposited into yet a third fund, from which Western Union can seek payment "to satisfy any claims or judgments, or any costs or fees associated with any claim or judgment against Western Union," with the district court's approval.

Western Union argues its interest in this third "indemnity" fund—and the potential effect of the attorney-fee award on the size of that fund—establishes its standing to challenge an award of attorney fees paid from the CSF. We disagree. Rather, we conclude any potential injury to Western Union is too attenuated from the award of attorney fees to Class Counsel to support Western Union's standing.

### *A. Injury In Fact*

"To qualify as a party with standing to litigate, a person must show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Arizonans for Official English*, 520 U.S. at 64 (internal quotation marks omitted). Where an injury is threatened rather than actual, "[a]llegations of *possible* future injury are not sufficient" to establish standing. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). But "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks omitted). Western Union contends it will suffer an injury from the attorney-fee award "because the award will deplete the funds available to indemnify Western Union against enforcement actions brought by unhappy states." In support of its claim of injury, Western Union has identified

record evidence tending to demonstrate that several States do not intend to accept payment from the cy pres fund and will instead pursue enforcement actions against Western Union. Western Union argues this "credible threat of enforcement" is adequate to demonstrate a "substantial risk that the harm will occur." *Cf. Susan B. Anthony List*, 134 S. Ct. at 2341, 2342 ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law.").

**1. Western Union's Interest in the Funds**

We first consider whether Western Union has a legally protected interest in the CSF or the separate indemnity fund that will be injured if an excessive attorney-fee award is paid from the CSF. Western Union has never disputed that the unclaimed transfer money it will deposit into the CSF belongs to the class members alone. As Western Union explains in its opening brief on appeal, class members who file claims "are merely getting their own, undisputed funds returned to them." The CSF is thus composed entirely of customer funds to which Western Union has disclaimed any present interest. And, in any event, the district court's approval of the settlement agreement "stripped [Western Union] of any present interest in the fund." *See Boeing*, 444 U.S. at 481 n.7. Instead "[t]he members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery." *Id.* at 481–82. Thus, Western Union has no interest in the CSF itself that would be invaded by diminution of that fund.

What Western Union terms its "reversionary" interest in the CSF is, in fact, an interest in reimbursement or indemnification payments from a separate fund that is created and funded only after all claims and fees are paid from the CSF. The settlement agreement provides "if there are remaining monies in the Class Settlement Fund after payment of all valid claims, administration fees, Class Representative incentive awards, and attorneys' fees and expenses, then the Parties agree that any remaining monies and accumulated interest will be put into a *cy pres* fund pursuant to the Court's Order." Per the district court's order, the money in the cy pres fund will be first offered to the States and, if refused, will be placed in the separate "indemnity" fund from which Western Union can seek reimbursement for costs and judgments incurred in future litigation by the objecting States. Thus, by the terms of the settlement agreement, Western Union's interest is in payments from this separate indemnity fund, not from the CSF, and not from the intervening cy pres fund.

Importantly, this separate indemnity fund is created only after class claims, attorney fees, and other costs of the settlement have been paid from the CSF, a new cy pres fund has been created, and one or more States have refused payment or initiated litigation against Western Union. The settlement agreement and district court's order therefore contemplate a fund contingent upon the outcome of these intermediate steps and limited to the excess available to create the indemnity fund; no provisions guarantee an indemnity fund of a particular size or proscribe the payment of fees beyond a certain point. Western Union's interest in payments from that fund is thus likewise contingent and limited. Under these facts, we cannot agree the

settlement agreement or the district court's order confers on Western Union a legally protectable interest in a larger indemnity fund.

Western Union relies on *Boeing Company v. Van Gemert*, 444 U.S. 472 (1980), to argue it has standing by virtue of its interest in payments from the indemnity fund. *Boeing* involved a class action brought by holders of registered debentures to recover losses resulting from Boeing's failure to provide proper notice that those debentures could be redeemed on favorable terms. 444 U.S. at 474. The district court entered a judgment assessing damages against Boeing with respect to the class as a whole and ordered Boeing to deposit that amount into escrow at a commercial bank. *Id.* at 476. Class members could then recover their individual share of the award through a special master appointed by the court. *Id.* Boeing claimed an interest in the return of any unclaimed funds. *Id.* at 477. The Supreme Court entertained Boeing's challenge to the scope of an attorney-fee award paid from the settlement fund, observing that Boeing had "an interest, arising from its colorable claim for the return of excess money, in whether attorney's fees could be assessed against the entire fund" as opposed to only that portion of the settlement fund actually claimed by class members. *Id.* at 481 n.7.

Western Union claims it has "much more than the 'colorable claim' asserted by Boeing" because the district court's order provides for indemnification of Western Union's costs of defense. But the district court's order here gives Western Union no right to the return of excess funds in the CSF, the cy pres fund, or the indemnity fund. Instead the settlement provides a much more limited right to reimbursement of

costs and judgments actually incurred, well after amounts have been expended to satisfy class claims, attorney fees, settlement expenses, class representative fees, and payments to settling States. And unlike in *Boeing*, the settlement fund here was comprised of amounts belonging to the class members, not to Western Union. We therefore do not agree that Western Union is in the same position as the defendant in *Boeing*, and *Boeing* does not alter our conclusion that Western Union's interest in payments from the indemnity fund is insufficient to give it standing to challenge the award of fees from the CSF.

**2. Western Union's Injury**

Next, even if we were to agree that Western Union's interests were implicated by a diminution in the value of the CSF or indemnity fund, we would still conclude Western Union has failed to demonstrate a substantial risk of actual injury. As discussed above, Western Union's interest is only in reimbursement or indemnification payments from the separate indemnity fund, not a return of the remainder of the fund itself. The district court's order authorizes Western Union to seek payment of judgments or reimbursement for costs and fees incurred in defending against the claims of non-settling States. Thus, it is not enough for Western Union to show a diminution of the indemnity fund; it must show that diminution would result in a deficiency in the fund's capacity to reimburse Western Union for its incurred costs and judgments.

We conclude there is insufficient record evidence to support such a claim of injury without resort to speculation. Even given the threats of enforcement identified

by Western Union, at this point in time there are no judgments against Western Union, and the likelihood of a State obtaining a judgment against Western Union is unclear. Indeed, the parties agree the States are unlikely to prevail against Western Union on claims for escheat of money that was paid into the CSF. And, in any event, "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Whitmore v. Arkansas*, 495 U.S. 149, 159–60 (1990). Thus, Western Union has not demonstrated a substantial risk that a judgment meriting payment from the indemnity fund will be entered against it, or in what amount. And while Western Union will certainly incur *some* costs in defending against even unsuccessful suits by the States, there is nothing in the record from which to estimate what those costs will be or to conclude they will exceed the amounts available to reimburse and indemnify Western Union. Given the uncertainty both in the amount of liability and costs Western Union will incur and in the amount of money ultimately available to indemnify Western Union, we cannot with any certainty conclude there is a substantial risk the indemnity fund will be insufficient to make Western Union whole. While Western Union need not demonstrate any particular magnitude of deficiency to show it will be injured by the payment of the attorney-fee award from the CSF, Western Union must demonstrate that a deficiency will result. On this record, it has failed to do so.

### *B. Traceability*

Western Union also suggests it will suffer injury from an excessive attorney-fee award because "[t]he large (30%) bite out of the fund will increase the likelihood

that states will be unhappy with their shares and seek relief from Western Union." "[T]he traceability component of the standing test contemplates a causal relationship between the injury and the defendants' challenged acts." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (internal quotation marks omitted). Western Union has directed us to no support for its claim that the size of the attorney-fee award may alter the likelihood of enforcement actions by the States. Rather, for the limited number of States where the record indicates intent to bring enforcement actions against Western Union, the "trigger" for those actions is Western Union's deposit of money into the CSF that would have escheated to the States. There is accordingly no evidence that any State would refrain from pursuing an enforcement action but for the reduction in its pro rata share by virtue of the attorney-fee award to Class Counsel. We share the Supreme Court's "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 133 S. Ct. at 1150. We therefore cannot conclude the attorney-fee award will cause additional States to bring enforcement actions, and Western Union has thus failed to demonstrate this alleged injury is fairly traceable to the attorney-fee award.

Because Western Union has not established a nonspeculative injury in fact that is fairly traceable to the attorney-fee award, we conclude Western Union has failed to establish standing. Accordingly, we need not consider whether any alleged injury would likely be redressed by a favorable decision.

## IV. CONCLUSION

Western Union lacks a legally protectable interest in the CSF that would be injured by the award of attorney fees to Class Counsel. Western Union's purported "reversionary" interest is merely a right to reimbursement of the expenses it actually incurs from litigation that may or may not be brought by third parties. And the reimbursement of those expenses will come from a separate indemnity fund that is to be created from a cy pres fund that will be established with excess proceeds in the CSF. In turn, the balance of the CSF is dependent on a variety of factors other than the amount of attorney fees, including the number of class members who seek relief. Accordingly, Western Union has not demonstrated any concrete and particularized and actual or imminent injury it will suffer as a result of the district court's approval of the attorney-fee award to Class Counsel. We therefore conclude Western Union lacks standing to challenge the attorney-fee award to Class Counsel, and we dismiss this appeal for lack of jurisdiction.